Craig **MORRITT as Administrator of the Estate of Debra Morritt and Craig Morritt, individually, Plaintiff,**

v.

**STRYKER CORPORATION, Stryker Orthopaedics, Inc., and Stryker Howmedica Osteontics, Inc., a division of Stryker Corporation, Defendants.**

No. 07–CV–2319 (RRM)(RER).

United States District Court,
E.D. New York.

Sept. 23, 2013.

Virginia E. Anello, Michael A. London, Randolph Daniel Janis, Stephanie O'Connor, Douglas & London, P.C., New York, NY, for Plaintiff.

Amy Terry Sheehan, Ronald G. Blum, Kenneth D. Friedman, Manatt Phelps & Phillips LLP, New York, NY, for Defendants.

### *MEMORANDUM AND ORDER*

ROSLYNN R. MAUSKOPF, District Judge.

In 2007, plaintiffs Debra and Craig Morritt filed this action against Stryker Corporation, Stryker Orthopaedics, Inc., and Stryker Howmedica Osteonics, a division of Stryker Corporation, for injuries allegedly caused by a defective knee replacement system manufactured by defendants. On June 8, 2007, defendants removed the action to this Court. (*See* Doc. No. 1.) On September 1, 2011, this Court issued a Memorandum and Order granting in part and denying in part defendants' motion for summary judgment; granting in part and denying in part defendants' motions to strike the declarations of Dr. Montalbano and Professor Rose pursuant to Fed. R.Civ.P. 37; and denying as moot defendants' motion to exclude the testimony of

Professor Rose pursuant to Fed.R.Evid. 702.[1] (*See* Doc. No. 58.)

Currently before the Court are plaintiff's motion to amend the complaint (Doc. No. 67), filed on December 17, 2012, and defendants' motion *in limine* seeking to preclude the nonmedical expert testimony of Dr. Montalbano (Doc. No. 69), filed on December 21, 2012. The Court referred these motions to the assigned Magistrate Judge, the Honorable Ramon E. Reyes, Jr., for a Report and Recommendation ("R & R"), which was issued on August 12, 2013. (*See* Doc. No. 74.) Plaintiff filed his objections to the R & R on September 3, 2013, and defendants filed their response to plaintiff's objections on September 20, 2013. (*See* Doc. Nos. 76–77.) For the purposes of this Memorandum and Order, the Court presumes familiarity with the R & R as well as the facts and relevant history of this case.

For the reasons that follow, the Court overrules plaintiff's objections and, having found no clear error in the remaining portions of the R & R, concurs with and adopts the R & R in its entirety. *See Covey v. Simonton,* 481 F.Supp.2d 224, 226 (E.D.N.Y.2007). Accordingly, plaintiff's motion to amend the complaint is DENIED and defendants' motion *in limine* is GRANTED.

**DISCUSSION**

In his R & R, Magistrate Judge Reyes recommended that this Court grant defendants' motion *in limine* and deny plaintiff's motion to amend the complaint. (*See* Doc. No. 74 at 23.) Plaintiff objects to the R & R, urging that Magistrate Judge Reyes incorrectly concluded that (1) Dr. Montalbano is not qualified to offer an opinion excluding bone cement as an alter-native cause of the polyethylene tibial insert; (2) Dr. Montalbano is not qualified to testify about the mechanical functioning of the prosthesis; (3) Dr. Montalbano should not be permitted to offer an affirmative opinion that the polyethylene tibial insert failed due to its defective nature; and (4) the methodology utilized by Dr. Montalbano during his differential diagnosis failed to meet the requirements of Fed.R.Civ.P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Plaintiff also objects to the R & R insofar as it recommends plaintiff's motion to amend the complaint be denied as untimely and futile. The Court reviews these portions of the R & R *de novo. See Mero v. Prieto,* 557 F.Supp.2d 357, 361 (E.D.N.Y.2008). All other portions of the R & R are reviewed for clear error. *See Price v. City of New York,* 797 F.Supp.2d 219, 223 (E.D.N.Y.2011).

**I. Motion *in Limine***

The Court first addresses defendants' motion *in limine,* which sought to strike certain testimony by Dr. Montalbano. Plaintiff has shed no new light on Dr. Montalbano's training or qualifications that would change the analysis applied by Magistrate Judge Reyes. Instead, plaintiff has attempted to circumvent the R & R by arguing that this Court has already ruled on these questions. It has not.

At summary judgment, the Court denied defendants' motion to strike the declaration of Dr. Montalbano because plaintiffs did not designate Dr. Montalbano as an expert or submit an expert report from him during discovery. (*See* Doc. No. 58 at 18–19.) In doing so, the Court held that

---

1. The Court also granted a motion to substitute Craig Morritt, as Administrator of the Estate of Debra Morritt, for Debra Morritt, who died intestate while the motion for summary judgment was pending. (*See* Doc. No. 58 at 1 n. 1.)

plaintiff could "rely on the declaration of Dr. Montalbano to rebut defendants' evidence that either bone cement or misalignment caused the premature failure of the Polyethylene Tibial Insert." (*Id.* at 19.) The Court found that such evidence did not run afoul of the disclosure requirements of Rule 26(a)(2) because "treating physicians may testify as to opinions formed during their treatment, including causation, severity, disability, permanency and future impairments, without the obligation to submit an expert report." (*Id.*) (quoting *Manganiello v. Agostini*, No. 07–CV–3644 (HB), 2008 WL 5159776, at *12, 2008 U.S. Dist. LEXIS 99181, at *35 (S.D.N.Y. Dec. 9, 2008)). In deference to that principle, the Court denied defendants' motion to strike Dr. Montalbano's declaration under Rule 37. (*See id.* at 23.) The Court then denied summary judgment as to plaintiff's manufacturing defect claim because triable issues of fact remained.

■ But the Court's holding, which was grounded in principles underlying discovery and the standard on summary judgment, extended no further. Plaintiff's assertions that this Court already ruled that Dr. Montalbano's testimony was lay testimony and in any event admissible is wholly mistaken. Indeed, the Court explicitly stated that "the only question presently before the Court is whether to exclude Dr. Montalbano's declaration pursuant to Rule 37." (Doc. No. 58 at 24 n. 11.) The Court also reaffirmed that "the requirements of *Daubert* 'are not diminished merely because the expert witness is a 'treating physician' rather than an expert retained solely for the purposes of litigation.'" (*Id.* (citing *Munafo v. Metro. Transp. Auth.*, No. 98–CV–4572 (ERK), 2003 WL 21799913, at *18, 2003 U.S. Dist. LEXIS 13495, at *54 (E.D.N.Y. Jan. 22, 2003); *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207 (8th Cir.2000)).) Any residual

misperception as to the scope of the ruling should have been resolved by the Court's observation that "defendants [we]re free to make a motion *in limine* challenging the reliability of Dr. Montalbano's testimony." (Doc. No. 58 at 24 n. 11.) In any event, a treating physician may not offer an opinion—even one formed during the course of treatment—on specialized subjects in which that physician has no training or for which there is no sufficiently reliable basis. Plaintiff's arguments on these points merely reiterate arguments already presented to Magistrate Judge Reyes. *See Walker v. Vaughan*, 216 F.Supp.2d 290, 292 (S.D.N.Y.2002) ("[W]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."); *Robinson v. Superintendent, Green Haven Corr. Facility*, No. 09–CV–1904 (KAM)(LB), 2012 WL 123263 (E.D.N.Y. Jan. 17, 2012) (same). Like Magistrate Judge Reyes, this Court finds these arguments to be unpersuasive and instead adopts the well-reasoned conclusions of the R & R.

## II. Motion to Amend

■ "Where a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir.2003) (quoting Fed. R.Civ.P. 16(b)). As Magistrate Judge Reyes noted, while the Court, "in the exercise of its discretion under Rule 16(b), also may consider other relevant factors," the "primary consideration" in a good cause analysis is "whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir.2007). Likewise, "considerations of undue delay, bad faith, and prejudice"—

considerations implicated by, if not subsumed in, the diligence inquiry—are the "touchstones of a district court's discretionary authority" under Rule 15(a). *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir.1984).

First, plaintiff argues that defendants' awareness of Debra Morritt's hip injury eliminates any disadvantage on defendants' part and urges that "this case was already litigated as if the hip injury was indeed pled in the initial complaint." (Pl.'s Objections to R & R at 183.) But plaintiffs have not even attempted to demonstrate diligence, and Magistrate Judge Reyes' observations to the contrary are well taken. "[L]imiting the time for amendments ... is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir.2000) (internal quotation omitted). Despite plaintiff's protestations to the contrary, permitting amendment now would be "prejudicial given the fact that discovery ha[s] already been completed and [defendants] ha[ve] already filed a motion for summary judgment." *Ansam Associates, Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985); *see also Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.1998) (same). The Court therefore finds plaintiff's objection is without merit.

Second, plaintiff objects that Magistrate Judge Reyes incorrectly employed a summary judgment standard in reviewing the motion to amend, and further challenges the Magistrate Judge's conclusions that plaintiff's motion is untimely and, in any event, that an amendment would be futile. (Pl.'s Objections to R & R at 192–95.) In general, the standard to be applied on a motion to amend is that invoked in response to a Rule 12(b)(6) motion to dismiss. *See, e.g., Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991). However, where a motion to amend is filed following a motion for summary judgment, "even if the amended complaint would state a valid claim on its face," leave to amend may be denied where "the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law...." *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001). Defendants moved for summary judgment on October 7, 2010. (*See* Doc. No. 33.) The Court partially granted that motion on September 1, 2011. (*See* Doc. No. 58.) Plaintiff's motion to amend was not filed until December 17, 2012. (*See* Doc. No. 67.) As such, Magistrate Judge Reyes applied the correct standard in this case. The Court therefore overrules this objection as well. Accordingly, the Court adopts the relevant portions of the R & R and DENIES plaintiff's motion to amend.

As to all other aspects of the R & R, the Court has reviewed for plain error and found none.

## CONCLUSION

For the foregoing reasons, this Court finds plaintiff's objections to the R & R to be without merit. Further, having reviewed the remaining portions of the R & R for clear error pursuant to 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72, and, finding none, the Court concurs with and adopts the R & R in its entirety. *See Covey*, 481 F.Supp.2d at 226.

Accordingly, plaintiff's motion to amend the complaint (Doc. No. 67) is DENIED and defendants' motion *in limine* (Doc. No. 69) is GRANTED.

This matter is recommitted to Magistrate Judge Reyes for continued pretrial

supervision, including any settlement discussions and the preparation of a Joint Pre–Trial Order.

SO ORDERED.

## REPORT & RECOMMENDATION

RAMON E. REYES, JR., United States Magistrate Judge.

This case arises from an allegedly defective polyethylene tibial insert, which was a component of the knee prosthesis implanted in Debra Morritt's ("Morritt") in June 2005. Before me for report and recommendation are Stryker's [1] motion *in limine* challenging the reliability of Morritt's treating physician and Debra and Craig Morritt's [2] ("Plaintiffs") motion to amend the complaint to add certain factual allegations and to include a wrongful death claim.

## BACKGROUND

Although this case has a protracted history, the facts informing the instant motions can be distilled as follows: [3] Plaintiffs commenced this action in state court on April 23, 2007, and Stryker removed the case to this Court on the basis of diversity jurisdiction on June 8, 2007. (Dkt. No. 1.) The complaint alleges numerous claims sounding in negligence, strict products liability, and breach of implied and express warranty, as well as a loss of consortium claim asserted by Craig Morritt. (*See id.*) On November 12, 2008, I entered a Scheduling Order to govern discovery, which among other deadlines, required the parties to amend the pleadings by November 26, 2008. (Dkt. No. 23.) Pursuant to a modified Scheduling Order, the parties completed fact discovery on December 30, 2009, and expert discovery on March 26, 2010. (Dkt. No. 23.) After the close of discovery, Stryker moved for summary judgment.[4] (Dkt. No. 33.) In opposing that motion, Plaintiffs submitted declarations from Professor Robert Rose and Dr. Montalbano. (Dkt. No. 41.) Stryker then requested that the Court strike these declarations under Federal Rule of Civil Procedure 37, arguing that they contain expert testimony that Plaintiffs did not previously disclose, in violation of the Federal Rules of Civil Procedure and my Scheduling Order. (Dkt. No. 48 at 2.)

While Stryker's summary judgment motion was pending, counsel informed the Court that Debra Morritt had died, and requested opportunity to substitute Craig Morritt, as administrator of Debra Morritt's estate, for Debra Morritt and to add a wrongful death claim. (Dkt. No. 54.) The Court requested further argument on both the alleged basis of the wrongful death claim and any impact the amendment would have on the pending summary

---

**1.** Stryker defendants include Stryker Corporation, Stryker Orthopaedics, Inc., and Stryker Howmedica Osteonics, Inc., a division of Stryker Corporation.

**2.** Debra Morritt died intestate on February 11, 2011. (Dkt. No. 50.) The Court granted Craig Morritt's motion for substitution pursuant to Federal Rule of Civil Procedure 25(a)(1). *Morritt v. Stryker Corp.*, No. 07–CV–2319 (RRM)(RER), 2011 WL 3876960, *1 n. 1 (E.D.N.Y. Sept. 1, 2011).

**3.** For a comprehensive account of facts of this case, I respectfully refer the reader to the

Court's summary judgment decision. *See Morritt*, 2011 WL 3876960, at *1–4 (E.D.N.Y. Sept. 1, 2011).

**4.** Stryker also moved to preclude the expert testimony of Professor Robert Rose, Plaintiffs' only expert witness, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Morritt*, 2011 WL 3876960, at *13 n. 12. The Court denied that motion as moot.

judgment motion. (Order dated 04/06/2011.)

On September 1, 2011, the Court granted Stryker's motion for summary judgment as to the design defect claim, but denied the motion as to the manufacturing defect claim.[5] *See generally Morritt v. Stryker Corp.*, 2011 WL 3876960, at *4–13 (E.D.N.Y. Sept. 1, 2011). As to Stryker's request to strike Dr. Montalbano's declaration, the Court concluded that "[t]he vast majority of the Montalbano Declaration does not run afoul of the disclosure requirements of Rule 26" and that "as a treating physician, Dr. Montalbano was free to testify to opinions he formed in the course of treating Debra Morrit." *Morritt*, 2011 WL 3876960, at *10. In denying summary judgment as to the manufacturing defect claim, the Court found that the declaration of Dr. Montalbano "[was] 'competent evidence, which, if credited by a jury' would be sufficient to rebut defendants' arguments that bone cement or misalignment caused the premature failure of the Polyethylene Tibial Insert." *Id.* at *13 (quoting *Quinlan v. Stryker Corp.*, No. 09–CV–7284 (HB), 2010 WL 3291807, at *6 (S.D.N.Y. Aug. 12, 2010)). At the same time, the Court expressly remarked that Stryker was "free to make a motion *in limine* challenging the reliability of Dr. Montalbano's testimony." *Id.* at *13 n. 11. Accordingly, Stryker now moves to preclude Dr. Montalbano from opining on issues relating to biomedical engineering and medical device manufacturing. (*See* Dkt. No. 69–1 ("Stryker's Mem.") at 5.)

In addition to its summary judgment decision, the Court issued an order requiring the parties to submit a joint status report on all remaining pre-trial issues, including Plaintiffs' request for leave to amend the complaint. (Joint Status Report Order dated 09/01/2011.) The Court subsequently held a pre-motion conference on Plaintiffs' anticipated motion and issued a briefing schedule. (Dkt. No. 63.) Plaintiffs now move to amend the complaint to add factual allegations regarding Debra Morritt's hip injury and to assert a wrongful death claim. (*See* Dkt. No. 67–1 ("Pls.' Mem.") at 4.)

After the parties' respective motions were fully briefed, Your Honor referred them to me for this report and recommendation. (Order Referring Motion dated 12/21/2012; Order Referring Motion dated 01/02/2013.)

## DISCUSSION

### I. Motion in Limine

#### A. Standard of Review

Courts in this Circuit routinely permit treating physicians to "testify as to opinions formed during their treatment, including causation, severity, disability, permanency and future impairments, without the obligation to submit an expert report." *Manganiello v. Agostini*, No. 07–CV–3644 (HB), 2008 WL 5159776, at *12 (S.D.N.Y. Dec. 9, 2008) (citations omitted) *aff'd*, 612 F.3d 149 (2d Cir.2010); *accord Deutsch v. Novartis Pharms. Corp.*, 768 F.Supp.2d 420, 472 (E.D.N.Y.2011) ("Generally, a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the *cause* of the illness.") (quoting *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir.2009)).

---

**5.** The Court also denied Stryker's motion to dismiss Plaintiffs' negligence and breach of warranty claims "because 'the analysis of those claims is nearly identical to the analysis for strict products liability.'" *Morritt*, 2011 WL 3876960, at *13 n. 12 (quoting *Quinlan v. Stryker Corp.*, No. 09–CV–7284 (HB), 2010 WL 3291807, at *3 n. 1 (S.D.N.Y. Aug. 12, 2010))

However, such "testimony relies on 'scientific, technical, [and] other specialized knowledge' and is therefore governed by [Federal Rules of Evidence] 702." *Romanelli v. Long Island R. Co.*, 898 F.Supp.2d 626, 630 (S.D.N.Y.2012) (citation and some quotation marks omitted; alteration in original). The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Baker v. Urban Outfitters, Inc.*, 254 F.Supp.2d 346, 353 (S.D.N.Y.2003) (citation omitted).

Rule 702 sets forth two prerequisites that must be satisfied before a witness is allowed to provide expert testimony. "First, the witness must be properly qualified as an expert to testify on scientific, technical, or specialized matters." *Ramos v. SimplexGrinnell LP*, 796 F.Supp.2d 346, 373 (E.D.N.Y.2011) (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81–82 (2d Cir.1997)). "Second, the court must determine whether the expert testimony is both relevant and reliable." *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). To assess whether expert testimony is sufficiently reliable the court engages in a flexible inquiry under which it may consider the following factors: "(1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir.2002) (quoting *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786; internal citations and quotation marks omitted).

"These factors, however, are only to be employed 'where they are reasonable measures of the reliability of expert testimony.'" *Castaldi v. Land Rover North America, Inc.*, No. 06–CV–1008 (JG)(KAM), 2007 WL 4165283, at *6 (E.D.N.Y. Nov. 21, 2007) (quoting *Zaremba v. Gen'l Motors Corp.*, 360 F.3d 355, 358 (2d Cir.2004) (some quotation marks omitted)).

### B. Application

Plaintiffs seek to offer Dr. Montalbano's testimony that premature polyethylene wear caused Morritt to suffer injuries and that a manufacturing, material, or design defect caused the tibial insert in Morritt's knee to fail. (*See* Dkt. No. 72, Exh. 8 ("Montalbano Decl.") ¶¶ 50–5 1.) Additionally, Dr. Montalbano intends to testify about his differential diagnosis ruling out alternative causes for the premature failure of the polyethylene tibial insert. (*See id.* ¶¶ 44–49.) He thus intends to testify that the failure of the polyethylene tibial insert "after less than one year was due exclusively and singularly to its defective nature and as such is attributable to" Stryker. (*Id.* ¶ 50.)

Although Stryker does not dispute that Dr. Montalbano "is qualified and may offer opinions about his treatment of [Morritt]," (Dkt. No. 73 ("Stryker Reply Mem.") at 8–9), it does object to him providing testimony "regarding alleged manufacturing defects, alleged polyethylene defects, bone cement pathology, or causation," (*id.* at 9). First, Stryker argues that "Dr. Montalbano lacks the qualifications, experience and training required to opine on an alleged manufacturing defect or causation of alleged medical device failure." (Stryker Mem. at 7.) In particular, Stryker points to Dr. Montalbano's lack of training or expertise in biotechnology, manufacturing processes, or materials science. (*See* Stryker

Reply Mem. at 3.) Second, Stryker argues that Dr. Montalbano failed to reliably conduct a differential diagnosis. (*Id.* at 5.) Stryker complains that Dr. Montalbano did not perform tests on the subject product, examine it under a microscope, or rely on any scientific literature to support his opinion as to the alleged manufacturing defect. (Stryker Mem. at 15.)

### 1. *Qualifications*

Plaintiffs argue that Dr. Montalbano is qualified to offer expert testimony by virtue of his "vast experience implanting knee prostheses" and his first-hand medical and surgical care of Debra Morritt. (Dkt. No. 71 ("Pls.' Opp'n") at 7.) As this Court recognized, Dr. Montalbano is a "veteran orthopedic surgeon with experience implanting replacement knee prosthesis." *Morritt,* 2011 WL 3876960, at *12. Dr. Montalbano attests that he performs approximately 100 total knee replacements in a year and that he uses Stryker products for such procedures. (Dkt. No. 43–2 ("Montalbano Dep.")[6] at 104:10–21; *see id.,* at 34:4–5 ("I've been using the Stryker total knee systems since I started my private practice."[7]).) He avers that he is "fully familiar" with the subject prosthesis and its component parts, its expected life expectancy, and its appearance and surface texture. (Montalbano Decl. ¶¶ 6, 39, 43.) Additionally, Dr. Montalbano attests that he personally examined the subject knee component and its component parts both during the arthroscopy and again af-

ter he removed it during the revision surgery. (*Id.* ¶¶ 25, 29–30.)

As an orthopedic surgeon with over a decade of experience using Stryker knee systems, and as Debra Morritt's treating physician, Dr. Montalbano is qualified to testify as to his examination of the polyethylene tibial insert and his medical diagnoses. His first-hand observations and professional experience qualify him to testify as to the appearance and surface texture of the polyethylene tibial insert. Dr. Montalbano documented his observations of wear and damage to the surface of the polyethylene tibial insert in his clinical files. (*See, e.g.,* Dkt. No. 70 ("Janis Decl."), Exh. 2 ("March 15, 2006 Report of Operation"); Janis Decl., Exh. 3 ("May 3, 2006 Report of Operation"); Janis Decl., Exh. 4 ("May 4, 2006 Discharge Summary").) His subsequent clinical diagnosis of polyethylene wear is grounded in his personal observations. Thus, I find that Dr. Montalbano is qualified to testify as Debra Morritt's treating physician about his examination of the polyethylene tibial insert and his medical diagnosis of polyethylene wear.

However, Dr. Montalbano should not be permitted to offer his opinion regarding the *source* of the polyethylene wear. Dr. Montalbano avers that he performed a differential diagnosis to exclude certain alternative causes of the failure of the polyethylene tibial insert. Among other causes, he excluded, to a reasonable degree of medical certainty, malignment[8]

---

**6.** The parties' motion papers include only excerpted portions from the transcript of the November 5, 2009 deposition of Dr. Montalbano. Reference is made to a copy of the full deposition transcript, previously submitted in connection to Stryker's summary judgment motion.

**7.** According to his website, Dr. Montalbano founded his private practice, Regional Orthopedics, in 1999. *See* REGIONAL ORTHOPEDICS,

http://www.regionalorthopedic.com/staff/gregory-montalbano-md/ (last visited Aug. 8, 2013).

**8.** Stryker does not appear to challenge Dr. Montalbano's qualifications to exclude malignment as an alternative cause of the polyethylene tibial insert's failure, subject to the Court's limiting instruction. *See Morritt,* 2011 WL 3876960, at 11 n. 8. In any event, I find that Dr. Montalbano is qualified to ren-

and bone cement (Montalbano Decl. ¶¶ 46–47), which are alternative causes proffered by Stryker's expert witnesses, *see Morritt*, 2011 WL 3876960, at *9. He concludes that the polyethylene tibial insert failed due to a "manufacturing, material, or design defect," (Montalbano Decl. ¶ 51), and that this defect is "attributable to … Stryker," (*id.* ¶ 50). Dr. Montalbano's exclusion of bone cement as an alternative cause of the polyethylene wear and affirmative opinion that the polyethylene tibial insert failed due to its defective nature go well beyond the "reasonable confines" of his clinical expertise. *Davis v. Carroll*, 937 F.Supp.2d 390, 413 (S.D.N.Y.2013) (citation omitted); *see also Steinman v. Spinal Concepts, Inc.*, No. 05–CV–774S, 2011 WL 4442836, at *5 (W.D.N.Y. Sept. 22, 2011) ("To the extent that [Plaintiffs' treating orthopedic surgeon] will testify about any defects in the design or manufacture of the Acufix system, he is clearly not qualified."); *Alexander v. Smith & Nephew, P.L.C.*, 98 F.Supp.2d 1310, 1316 n. 3 (N.D.Okla.2000) ("Dr. Farrar further lacks the qualifications necessary to render opinions regarding the mechanical behavior of the Rogozinski device while implanted. Dr. Farrar has demonstrated absolutely no training, education, or experience in biomechanics or any related field.") Dr. Montalbano seeks to opine not only on the causes of Debra Morritt's injuries, but also on the cause of the tibial insert's failure. In doing so, Dr. Montalbano purports to render "expert opinion on [ ] entirely different field[s] or discipline[s]" from his medical background, *Davis*, 937 F.Supp.2d at 413, including manufacturing processes, biomedical engineering, material science, and bone cement pathology. Dr. Montalbano claims no training, education, or experience in these subject areas. (Janis

Decl., Exh. 6 ("Curriculum Vitae").) And Plaintiffs offers no explanation as to why Dr. Montalbano's clinical experience and personal knowledge of the subject knee prosthesis and its component parts afford him the competency to opine on an alleged defect in its manufacturing. *See Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp.2d 558, 642 (S.D.N.Y.2007) ("An expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702.") (citations omitted). Put differently, Plaintiffs have failed to show that Dr. Montalbano's expertise in orthopedic medicine and surgical principles and concepts qualifies him to testify as to the mechanical functioning of a medical device.

■ Thus, while the Federal Rules embody standards of " '[l]iberality and flexibility in evaluating qualifications,' " *Kass v. West Bend Co.*, No. 02–CV–3719 (NGG), 2004 WL 2475606, *4 (E.D.N.Y. Nov. 4, 2004) (citation omitted) *aff'd*, 158 Fed. Appx. 352 (2d Cir.2005), Plaintiffs have failed to establish that Dr. Montalbano possesses the minimum qualifications to exclude bone cement as an alternative cause of the polyethylene tibial insert's failure, or to opine affirmatively that a manufacturing defect caused the polyethylene tibial insert to fail. Accordingly, I respectfully recommend that the Court preclude Dr. Montalbano from offering such expert testimony. *See Davis*, 937 F.Supp.2d at 413 ("[W]here an expert is admitted under Rule 702 and then purports to offer opinions beyond the scope of his expertise, courts strike the extraneous testimony, as the admission of an expert does not provide that individual with carte

---

der an opinion about alignment based on his practical experience as a orthopedic surgeon. Additionally, Dr. Montalbano avers that he

personally reviewed the CAT scan image of the right knee and observed no clinical signs of malignment. (Montalbano Decl. ¶ 46.)

blanche to opine on every issue in the case.").

### 2. *Differential Diagnosis*

■■■■■ Dr. Montalbano's opinion testimony that a defect caused the polyethylene tibial insert to fail is inadmissible for the additional reason that he failed to employ a reliable scientific methodology to reach such a conclusion. Much of Plaintiffs' argument in defense of Dr. Montalbano's methodology focuses on the admissibility of differential diagnoses.[9] (*See* Pls.' Opp'n, at 8–10.) Indeed, "[t]here may be instances where, because of the rigor of differential diagnosis performed, the expert's training and experience, the type of illness or injury at issue, or some other case-specific circumstance, a differential diagnosis is sufficient to support an expert's opinion" on causation. *Ruggiero,* 424 F.3d at 254 (2d Cir.2005) (citing *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043–44 (2d Cir.1995)). However, the issue here is not the admissibility of a rigorous differential diagnosis generally, but the admissibility of Dr. Montalbano's differential diagnosis specifically. Plainly stated, Dr. Montalbano's methodology fails to meet the standards necessary to permit admissibility.

Dr. Montalbano observed the polyethylene tibial insert during the arthroscopy and after he removed it during the revision surgery. As Stryker points out, Dr. Montalbano did not observe the tibial insert under a microscope after it was removed (*see* Montalbano Dep., at 90:13–91:17), nor does he claim to have analyzed or tested the polyethylene tibial insert by any ac-cepted scientific protocols, (*see* Montalbano Decl. ¶¶ 29–30). He does not cite to manufacturing records or pertinent scientific literature. *See Amorgianos,* 303 F.3d at 267 ("Where an expert *otherwise reliably utilizes scientific methods to reach a conclusion,* lack of textual support may 'go to the weight, not the admissibility' of the expert's testimony." (emphasis added)) (quoting *McCullock,* 61 F.3d at 1044). Further, as discussed above, Dr. Montalbano lacks the requisite qualifications to reliably exclude certain alternative causes and to "rule in" a manufacturing, material, or design defect. *See Ruggiero,* 424 F.3d at 254 ("Where an expert employs differential diagnosis to 'rule out' other potential causes for the injury at issue, he must also 'rule in' the suspected cause, and do so using 'scientifically valid methodology.'") (citation and some quotation marks omitted); *see also Devito v. Smithkline Beecham Corp.,* No. 02–CV–0745 (NPM), 2004 WL 3691343, at *8 (N.D.N.Y. Nov. 29, 2004) (observing that a "court's evaluation of qualifications is not always entirely distinct from the court's evaluation of reliability.") (citation and quotation marks omitted).

What is more, the factual and scientific foundation for Dr. Montalbano's opinions is not always clear. For example, Dr. Montalbano excludes third body wear and bone cement, in part, because "[t]here was no cement in the synovium and only 'miniscule' pieces of bone in the specimen from *May 5, 2006* " (Montalbano Decl. ¶ 47 (emphasis added)), but his statement appears to reference the diagnosis of the surgical shavings from the *March 15, 2006* arth[r]oscopy, (*id.* ¶ 21).[10] That diagnosis

---

**9.** A differential diagnosis is "a patient-specific process of ruling out potential causes of an illness as unlikely, until one cause remains." *Ruggiero v. Warner–Lambert Co.,* 424 F.3d 249, 251 (2d Cir.2005);

**10.** Dr. Montalbano states that he sent the tibial insert to the pathology department after the May 3, 2006 replacement surgery (Montalbano Dec. ¶ 32), and that he sent "fluid" for analysis on May 5, 2006, with no bacteria or cells being reported (*id.* ¶ 48). He further

does not expressly reference bone cement.[11] (*Id.*) Dr. Montalbano also states "there is likely" to be residue cement particles after knee irrigation, but "this particle load is *not* enough to cause premature failure of the polythene implant." (*Id.* ¶ 47.) In order to reach this opinion, he speculates as to the facts (*i.e.* the presence of bone cement and the amount) and provides no scientific foundation for his conclusion. Without a background in materials science or bone cement pathology, and without employing scientific methodology or citing to scientific literature or textual support, Dr. Montalbano excludes bone cement based on his assumptions of bone cement wear patterns and the effect of floating cement particles on polyethylene surfaces. (Montalbano Decl. ¶¶ 37–40); *see Amorgianos,* 303 F.3d at 267 ("Where an expert *otherwise reliably utilizes scientific methods to reach a conclusion,* lack of textual support may 'go to the weight, not the admissibility' of the expert's testimony." (emphasis added)) (quoting *McCullock,* 61 F.3d at 1044).

Finally, Dr. Montalbano's differential diagnosis relies impermissibly on information learned outside of treatment. Accordingly, the Court precluded Dr. Montalbano from relying on the reports of Stryker's expert witnesses in his differential diagnosis. *Morritt,* 2011 WL 3876960, at *11 n. 8, *12 n. 9. This preclusion of certain facts

and opinions on which Dr. Montalbano initially relied casts further doubt on the reliability of his differential diagnosis. *See Amorgianos,* 303 F.3d at 268 ("In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand.") Moreover, to the extent that Dr. Montalbano relies on such expert reports, it is unclear that he performed the differential diagnosis as presented in the course of treating Debra Morritt. Indeed, Dr. Montalbano admitted at his deposition that he told Morritt "the polyethylene insert appears to have failed prematurely. And [he] didn't have an explanation as to why that occurred." (Montalbano Dep. 28:15–17). For all these reasons, I conclude Dr. Montalbano's methodology is simply inadequate to support his conclusion that a manufacturing, material, or design defect caused the polyethylene tibial insert to fail.

In sum, although "Rule 702 embodies a liberal standard of admissibility for expert opinions," *Nimely v. City of New York,* 414 F.3d 381, 395 (2d Cir.2005), I cannot say that Dr. Montalbano's proposed expert testimony reflects "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," *id.* at 396,

---

states that the only findings "are a foreign body reaction in the synovium with birefringent crystals (polyethylene)." (*Id.*) It is unclear whether these are the specific diagnoses of the pathology department, or Dr. Montalbano's interpretation of the pathology reports, the conclusions of Stryker's expert witnesses, or a combination thereof.

11. The pathology department's final diagnosis of the March 15, 2006 specimen stated "markedly reactive synovium, necrotic fibroconnective tissue with microcalcifications, unremarkable bone fragments. Fragmented, birefringent, foreign material was also present."

(Montalbano Decl. ¶ 21) Notably, Dr. Montalbano refers to the report of Stryker's expert pathologist, Dr. Nelson, who found "only minuscule bone fragments" and no cement particles in the March 15, 2006 pathology specimen. (*Id.; see also* Dkt. No. 36–3 ("Nelson Report," at 72) (ECF assigned page number).) From reading Dr. Nelson's report, I am aware of two pathology reports dated May 5, 2006, but I am unable to locate them in the record. In any event, it does not appear that these reports referenced bone cement. (Nelson Report, at 72.)

and I therefore must recommend that the Court grant Stryker's motion to preclude Dr. Montalbano from opining on issues of biomedical engineering and medical device manufacturing. While Plaintiffs argue that any deficiency in Dr. Montalbano's qualifications and methodology may be addressed on cross-examination, Plaintiffs bear the burden of establishing a threshold level of competency, and they have failed to do so here.

## II. *Motion to Amend*

### A. *Standard of Review*

▉▉▉ Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." FED.R.CIV.P. 15(a). "A Rule 15(a) motion for leave to amend may be denied for 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Pineda–Herrera v. Da–Ar–Da, Inc.*, No. 09–CV–5140 (RLM), 2011 WL 710447, at *1 (E.D.N.Y. Feb. 22, 2011) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir.2005)). And where, as here, a plaintiff seeks to amend the complaint after the deadline established by a scheduling order, "the lenient standard under Rule 15(a) ... must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (citing FED.R.CIV.P. 15(a), 16(b)); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000) ("We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). The "primary consideration" in a "good cause" analysis is

the diligence of the moving party, but the court may, in its discretion, consider "other relevant factors." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir.2007).

### B. *Application*

#### 1. *Good Cause*

▉▉▉ Regarding the addition of factual allegations relating to Debra Morritt's hip injury, Plaintiffs argue that good cause exists because "this case has already been litigated as if the hip injury claim was part of the initial Complaint." (Dkt. No. 68 ("Pls.' Reply Mem.") at 8.) Diligence is the "primary consideration" in evaluating good cause. *Kassner*, 496 F.3d at 244. Plaintiffs seek to minimize the focus on diligence by urging the Court to consider the balance of other factors, such as the alleged lack of prejudice to Stryker. (*See id.* at 3, 7–8; *see also* Pls.' Mem. at 16–18.) Stryker counters that Plaintiffs unduly delayed in amending the complaint to add the hip injury, as Debra Morritt fractured her hip days before filing the complaint in state court, nearly twenty months prior to the November 2008 deadline to amend the pleadings pursuant to the Scheduling Order, and well before the close of fact discovery on December 30, 2009. (Dkt. No. 65 ("Stryker Opp'n"), at 11–13.) Stryker further counters that Plaintiffs' proposed amendment would prejudice Stryker by delaying resolution of this already protracted litigation, which is otherwise trial ready. (*Id.* at 13–14, 17–18.)

▉▉▉ As to diligence, Plaintiffs all but admit their lack of diligence in amending the complaint to include the hip injury. (Pls.' Reply Mem. at 7–9.) To be sure, Plaintiffs cannot refute that they knew of Morritt's hip injuries prior to filing the complaint, and well before the deadline for amending the pleadings. *See Soroof Trad-*

*ing Dev. Co., Ltd. v. GE Microgen, Inc.,* 283 F.R.D. 142, 148 (S.D.N.Y.2012) (stating that a finding of diligence "depends on whether the proposed amendment relies on information that [the plaintiff] knew or should have known before the [scheduling order] deadline for amendments to the pleadings") (citations *Oscar v. BMW of North Am.,* No. 09–CV–0011 (PAE), 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011)). Accordingly, Plaintiffs have not shown that "despite [their] having exercised diligence, the applicable deadline could not have been reasonably met." *Moore v. Publicis Groupe SA,* No. 11–CV–1279 (ALC)(AJP), 2012 WL 2574742, at *3 (S.D.N.Y. June 29, 2012) (citation and quotation marks omitted). Nor can Plaintiffs claim that the proposed amendment to include the hip injuries is based on "newly-discovered, previously unavailable evidence." *Ariztegui v. United Techs. Int'l Operations, Inc.,* No. 10–CV–0672 (JBA), 2011 WL 5593115, at *3 (D.Conn. Nov. 17, 2011) (citing *Lowry v. Eastman Kodak Co.,* 14 Fed.Appx. 27, 30 (2d Cir.2001)). While the unfortunate death of Debra Morritt, and Craig Morritt's desire to add a wrongful death claim, may have necessitated Plaintiffs to formally plead the hip injury at this late date, the reasons for seeking amendment are irrelevant. "[T]he diligence inquiry focuses not on when plaintiff [ ] learned of facts relevant to their motivation to amend, but rather when they learned of the facts underlying their potential claims against the [ ] defendants." *Point 4 Data Corp. v. Tri–State Surgical Supply & Equip., Ltd.,* No. 11–CV–0726 (CBA)(RLM), 2012 WL 2458060, at *7 (E.D.N.Y. June 27, 2012) (Mann, M.J.) *aff'd,* 2012 WL 3306612 (E.D.N.Y. Aug.13, 2012) (Amon, Chief J.); *see also 380544 Canada, Inc. v. Aspen Tech., Inc.,* No. 07–CV–1204 (JFK) 2011 WL 4089876, at *3 (S.D.N.Y. Sept. 14, 2011) ("[W]here the substance of the proposed amendment

was known to the movant prior to the deadline for amending pleadings, but the movant nevertheless failed to act, courts have denied leave to amend under Rule 16.") (citation omitted).

As to Plaintiffs' arguments regarding prejudice, it is true that Stryker was on notice of Debra Morritt's hip injury, and indeed accounted for it to some extent in defending against this case. But Stryker's awareness of the alleged hip injury does not alter the fact that allowing the proposed amendments would require further discovery, long after the close of discovery and decision on summary judgment. *See Ansam Assocs. v. Cola Petroleum,* 760 F.2d 442, 446 (2d Cir.1985) (recognizing that the proposed amendment "would have been especially prejudicial given the fact that discovery had already been completed and [defendant] had already filed a motion for summary judgment."). I address the issue of prejudice more fully below.

██ While Plaintiffs cannot demonstrate good cause as to the factual allegations relating to the hip injury, the same cannot be said for the addition of the wrongful death claim. Debra Morritt's death, late in the course of litigation, was an unforeseeable event, and Plaintiffs demonstrated diligence in timely moving to amend the complaint to add a wrongful death claim. Any prejudice to Stryker is overshadowed by the circumstances and Plaintiffs' diligence in responding to Debra Morritt's death.

## 2. *Futility*

According to Plaintiffs, "[t]he proposed amended complaint is the same complaint that was initially filed with the exception that it includes proposed claims and facts pertaining to Debra Morritt's hip injury and her alleged wrongful death." (Pls.' Reply Mem. at 6–7.) Plaintiffs maintain

that they can establish a causal link between Debra Morritt's post operative right knee, her hip fracture, and hastened death through the testimony of Dr. Nachum Levin, Debra Morritt's treating physician. (*Id.*; Dkt. No. 67–3 ("Levin Decl.") ¶¶ 7–12.) Stryker asks the Court to strike Dr. Levin's declaration. (Stryker Opp'n at 8–10.) Assuming that Plaintiffs are prohibited from asserting factual allegations relating to Debra Morritt's hip injury and introducing Dr. Levin's declaration, Stryker argues that the proposed wrongful death claim is futile, as Plaintiffs cannot establish the causal connection between Debra Morritt's knee surgeries and her unfortunate death. (Stryker Opp'n at 17–18.)

Although courts generally examine the futility of an amendment under the Federal Rule of Civil Procedure 12(b)(6) standard, where a cross-motion to amend the complaint is filed in response to a motion for summary judgment, the Second Circuit has recognized that, "even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)." *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001); *see also Krasnyi Oktyabr, Inc. v. T.G.F. Prods., LLC*, 2008 WL 4426961, at *3 (E.D.N.Y. Sept. 25, 2008) (Trager, J.); *Smith v. P.O. Canine Dog Chas*, No. 02–CV–6240 (KMW)(DF), 2004 WL 2202564, at *12 (S.D.N.Y. Sept. 28, 2004) ("Where ... a summary judgment motion has been made and evidence outside the pleadings has already been submitted, the court must determine whether the amendment would be futile under the summary judgment standard."); *Islamic Soc'y of Fire Dep't Pers.*, 205 F.Supp.2d 75, 80 (E.D.N.Y.2002) (Glasser, J.).

In this case, Plaintiffs seek to amend their complaint after the close of discovery and after decision on summary judgment, wherein the Court considered much of the same factual and legal bases that underlie the proposed amended complaint. Inasmuch as courts apply the summary judgment standard when considering cross-motions for summary judgment and to amend the complaint, I would argue that the present circumstances are sufficiently analogous, as the Court has previously considered evidence outside the pleadings in rendering its summary judgment decision, at least as to the issue of causation. *See Smith*, 2004 WL 2202564, at *12. The parties have had ample opportunity to develop and explore the factual foundation supporting the existence of a manufacturing defect. And Plaintiffs state that the universe of evidence in that regard would not change from that considered by the Court in rending its summary judgment decision. (*See* Sept. 14, 2012 Tr. at 5:20–22 ("[B]ut as I mentioned, we would not be offering opinions relating [to] causation that could have been offered prior."); *see generally* Sept. 14, 2012 Tr. at 4:23–5:22.) As discussed more fully below, the instant motions demand that the Court revisit the issue of causation, which was at the heart of the summary judgment decision. Under these circumstances, I find that applying the summary judgment standard is warranted.

Turning briefly to the summary judgment decision, the Court allowed Plaintiffs' manufacturing defect claim to go forward on the grounds that Dr. Montalbano's declaration, if credited by a jury, would be sufficient to rebut Stryker's argument that bone cement or misalignment caused the tibial insert to fail. *See Morritt*, 2011 WL 3876960, at *13. Nonetheless, the Court recognized that Stryker was "free to make a motion *in limine* challenging the reliability of Dr. Montalbano's testimony." *Id.* at

13 n. 11. Stryker did just that, and as discussed above, my recommendation to the Court is to preclude key aspects of Dr. Montalbano's testimony, including his exclusion of bone cement as an alternative cause of the tibial insert's failure. Having concluded that Dr. Montalbano's testimony regarding causation is inadmissible, Plaintiffs have no competent evidence to rebut all alternative causes for the polyethylene tibial insert's failure that are not attributable to Stryker. *See Morritt*, 2011 WL 3876960, at *8–9 (stating plaintiff must "prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants.") (citing *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 125 (2d Cir. 2006)). Without evidence to establish a manufacturing defect, the alleged causal chain breaks down at the first instance, leaving Plaintiffs unable establish that Stryker's conduct caused Debra Morritt's death.[12] *See Chong v. New York City Transit Authority*, 83 A.D.2d 546, 441 N.Y.S.2d 24, 25–6 (2d Dep't 1981) (identifying elements of wrongful death claim). Accordingly, I find that allowing Plaintiffs to amend the complaint to include a wrongful death claim would be futile.[13]

### 3. *Prejudice*

Plaintiffs argue that the proposed amendment does not prejudice Stryker because the parties have proceeded in this litigation "as if the hip injuries were already formally pled as part of damages in the complaint." (Pls.' Mem. at 7). Stryker contends that allowing the amendment reopens discovery and reshapes this action after the Court's summary judgment decision. (Stryker's Opp'n at 14.)

■ An amendment is prejudicial to a non-moving party when " 'the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the [non-moving] from bringing a timely action in another jurisdiction.' " *Media Alliance, Inc. v. Mirch*, No. 09–CV–659 (LEK)(RFT), 2010 WL 2557450, at *2 (N.D.N.Y. June 24, 2010) (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir.2000)). After five years of litigation, characterized by protracted discovery and extensive motion practice, this case is nearly ready for trial. *Messier v. Southbury Training School*, No. 94–CV–1706 (EBB), 1999 WL 20907, at *3 (D.Conn. Jan. 5, 1999) ("[C]ourts must closely examine the nonmoving party's time and expenses spent preparing for trial in reliance on prior pleadings and the potential expenses necessary to address issues raised by the proposed amendments.") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). Allowing the amendment will delay resolution of this case. *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.1998) ("One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action.") (citation and quotation marks omitted). Specifically, the parties agree that amendment will require reopening

---

**12.** Given this conclusion, I do not address Stryker's request to strike the declaration of Dr. Levin, on which Plaintiffs rely to link subsequent events in the causal chain.

**13.** I recognize that the parties did not have opportunity to brief the particular arguments raised in my evaluation of the futility of the proposed amendment. However, the practical effect of Stryker's motion *in limine* on the viability of Plaintiffs' theory of causation should come as no surprise to the parties.

discovery. Although the extent of the additional discovery is disputed, Plaintiffs acknowledge that expert discovery may become necessary, (Sept. 14, 2012 Tr. at 5:16–22), which is an expensive and time consuming endeavor. Additionally, further motion practice would be likely. (*See* Styrker's Opp'n, at 9 n. 3 (expressing its intent to file a motion *in limine* as to Dr. Levin.))

In addition to the delays and expense of further discovery and motion practice, Stryker faces a tactical disadvantage: it has developed a litigation strategy based on a defined universe of evidence, and advanced that strategy by filing its motion for summary judgment. *See Krumme*, 143 F.3d at 88 ("[A] proposed amendment is especially prejudicial when discovery had already been completed and non-movant had already filed a motion for summary judgment.") (citations omitted); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990) (affirming denial of leave to file a third amended complaint after discovery had closed, the nonmovant had filed for summary judgment, and the action had been pending for more than seventeen months). These effects clearly constitute significant disruption "in the orderly course of these proceedings." *Toliver v. Office–Dep't of Corr. NYC*, No. 10–CV–5354 (DAB), 2013 WL 3783727, at *6 (S.D.N.Y. July 9, 2013) (citing *Wesley v. Muhammad*, No. 05–CV–5833, 2010 WL 1541536, at *3 (S.D.N.Y. April 13, 2010)).

In light of the above, I find that the balance of factors favor denying Plaintiffs' motion to amend the complaint. Although not unsympathetic to the circumstances that brought Plaintiffs' motion to a head, I cannot ignore that allowing the amendment would be ultimately futile and prejudicial to Stryker. Nor can I dismiss Plaintiffs' lack of diligence in amending the complaint to reflect the injuries to the Debra Morritt's hip. For these reasons, I respectfully recommend that Plaintiffs' motion to amend the complaint be denied.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court GRANT Stryker's motion *in limine* and DENY Plaintiffs' motion to amend the complaint.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Roslynn R. Mauskopf within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6, 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

Dated: August 12, 2013.